Filed 12/28/22  P. v. Lopez CA5

<u>**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**</u>

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>JOHNY NUNEZ LOPEZ,<br><br>    Defendant and Appellant. | F082854<br><br>(Super. Ct. No. F13911536)<br><br>**OPINION** |

-ooOoo-

## <u>THE COURT</u>*

APPEAL from a judgment of the Superior Court of Fresno County.  Jonathan B. Conklin, Judge.

Law Office of Nicco Capozzi and Nicco Capozzi for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Kari Ricci Mueller and Darren K. Indermill, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

---

*        Before Levy, Acting P. J., Smith, J. and Meehan, J.

## INTRODUCTION

This case returns to us after we affirmed defendant Johny Nunez Lopez's convictions but remanded to give the trial court an opportunity to consider exercising its new discretion under Senate Bill No. 620 (2017–2018 Reg. Sess.) (Senate Bill 620) to strike certain firearm enhancements.[1]  At a sentencing hearing in May 2021, the trial court struck one firearm enhancement imposed under Penal Code section 12022.53, subdivision (d) (§ 12022.53(d) or section 12022.53(d)), but declined to strike any others.[2] On appeal, defendant argues the refusal to strike any additional firearm enhancements was an abuse of discretion.  We disagree and affirm.

## FACTUAL SUMMARY[3]

In December 2013, after an afternoon and evening of drinking, defendant, who was a member of a Norteño gang, obtained a semiautomatic .45-caliber handgun with an extended magazine, and started walking through a residential neighborhood.  He encountered a woman, Joey, in a car who was helping her stepbrother look for his dogs. When Joey saw a man later identified as defendant walking, she stopped to ask if he had seen the dogs.  In response to her question, Joey saw defendant reach for a gun in his waistband, put the gun to her head, and she heard a clicking sound.  No bullet fired, and she quickly laid down across the front seat of her car, pushed the gas pedal down and drove away.

Meanwhile, Joey's stepbrother, Dylan, was in his front yard calling for his dogs. A neighbor, Angel, and Angel's wife had come out to ask Dylan what he was doing;

---

[1]    Senate Bill 620 amended Penal Code section 12022.53, subdivision (h), which gave the trial court discretion "in the interest of justice pursuant to Section 1385 and at the time of sentencing, [to] strike or dismiss an enhancement otherwise required to be imposed by this section."  (§ 12022.53, subd. (h); see Stats. 2017, ch. 682, § 2.)

[2]    All statutory references are to the Penal Code unless otherwise indicated.

[3]    This is a basic summary of the underlying facts taken from the original, nonpublished opinion.  (*People v. Lopez* (Jan. 16, 2020, F074405) [nonpub. opn].)

during their conversation, Dylan heard a pop sound and saw someone he later identified as defendant approaching him. Defendant walked toward Dylan and said he was going to kill him. Dylan attempted to back up and tried to reason with defendant, but defendant fired on Dylan twice, striking him in the chest and the stomach. Dylan dropped to the ground and crawled under a truck, but defendant leaned down and shot him a third time. Dylan crawled out from underneath the truck and ran while defendant followed, firing the weapon. Angel and his wife ran for the safety of their house, but a stray bullet from defendant's gun struck Angel while in the house. Another neighbor confronted defendant and was able to obtain the gun; defendant was subsequently arrested and charged.

Defendant testified he did not remember anything about the shooting, and he did not recognize either Joey or Dylan. He had no idea where he received the gun that he was carrying on the night of the incident, and he had never seen it before. He had no memory of when he loaded the gun or the events that followed. Blood tests showed defendant's blood-alcohol content on the night of the incident was 0.22 percent.

A jury convicted defendant of two counts of attempted second degree murder (§§ 664, 187, subd. (a); counts 1–2), assault with a semiautomatic weapon (§ 245, subd. (b); count 3) and shooting at an inhabited dwelling causing injury (§ 246; count 4). The jury also found true the following special enhancement allegations: defendant personally and intentionally discharged a firearm, which caused great bodily injury in the commission of attempted murder and in the commission of shooting at an inhabited dwelling (counts 1 & 4) (§ 12022.53(d)); defendant personally used a firearm during the commission of an attempted murder (count 2) (§ 12022.53, subd. (b)); and defendant personally used a firearm in the commission of a felony (count 3) (§ 12022.5, subd. (a)).

The trial court sentenced defendant to the upper term of nine years, plus an additional 10 years for personally using a firearm in the commission of the offense (count 2); a consecutive determinate term of two years four months (one-third the middle term), plus 25 years to life for the firearm enhancement under section 12022.53(d)

(count 1); followed by a consecutive term of one year eight months (one-third the middle term) for shooting at an inhabited dwelling, plus an additional 25 years to life for the firearm enhancement under section 12022.53(d) (count 4). The court stayed the nine-year term imposed on count 3, as well as the attached firearm enhancement. The total term imposed was 23 years determinate, followed by two consecutive indeterminate terms of 25 years to life.

Upon defendant's appeal, the convictions were affirmed but the matter was remanded for the trial court to consider whether to exercise its new discretion under Senate Bill 620 to strike the section 12022.53 firearm enhancements. At a sentencing hearing in May 2021, the trial court elected to exercise its discretion with respect to one firearm enhancement under section 12022.53(d) attached to count 4 for shooting at an inhabited dwelling and causing injury. That enhancement carried a term of 25 years to life, which was stricken from defendant's sentence, and defendant's aggregate sentence was reduced to 23 years determinate followed by an indeterminate term of 25 years to life. Defendant appeals again and asserts the trial court abused its discretion in refusing to strike the remaining firearm enhancements.

## DISCUSSION

Section 12022.53 provides three different sentence enhancements for the personal use of a firearm in the commission of certain offenses: a 10-year enhancement for personal use (§ 12022.53, subd. (b)); a 20-year enhancement for personal and intentional discharge (§ 12022.53, subd. (c)); and a 25-year-to-life enhancement for personal and intentional discharge causing great bodily injury or death (§ 12022.53(d)).

Section 12022.53 enhancements used to be mandatory, but, as of January 1, 2018, pursuant to Senate Bill 620, trial judges have discretion to strike or dismiss them "in the interest of justice" under section 1385. (§ 12022.53, subd. (h); see *People v. Pearson* (2019) 38 Cal.App.5th 112, 116 (*Pearson*) ["Senate Bill No. 620 …, which added

4.

section 12022.53, subdivision (h), gave the trial court discretion … '[to] strike or dismiss an enhancement otherwise required to be imposed by this section.'"].)

A trial court's refusal to strike a section 12022.53 firearm enhancement under section 1385 is reviewed for an abuse of discretion. (*People v. Carmony* (2004) 33 Cal.4th 367, 374–375; *Pearson, supra*, 38 Cal.App.5th at p. 116.) That standard is guided by two "fundamental precepts": first, the burden is on the party attacking the sentence to clearly show the sentencing decision was irrational or arbitrary; in the absence of such a showing, the trial court is """presumed to have acted to achieve legitimate sentencing objectives, and its discretionary determination to impose a particular sentence will not be set aside on review.""" (*People v. Carmony, supra*, at pp. 376–377.) Second, a decision will not be reversed simply because reasonable people might disagree; a reviewing court is """"neither authorized nor warranted in substituting its judgment for the judgment of the trial judge."""" (*Id.* at p. 377.) Taken together, these precepts establish reversal is not required unless the defendant clearly shows the trial court's decision is so irrational and arbitrary that no reasonable person could agree with it. (*Ibid.*)

Here, although the trial court struck the section 12022.53(d) firearm enhancement imposed as to count 4, defendant argues the trial court abused its discretion in refusing to strike the firearm enhancements associated with counts 1 and 2 (also § 12022.53 enhancements). Defendant maintains the trial court failed to account for his "'whole' person" and his life history. Among several factors defendant argues are mitigating, he points to his relative youth and his intoxication at the time the crimes were committed; his good record of employment prior to the crimes; his minimal prior criminal history; and that he has availed himself of prison programs and education, has no record of rules violations, and has formally disavowed his gang affiliation. According to defendant, these factors weigh strongly in favor of a more proportional sentence, which is exemplified by the Legislature's enactment of Senate Bill No. 81 (2021–2022 Reg. Sess.)

(Senate Bill 81), effective January 1, 2022, that significantly amended section 1385 and gave new dimension to how trial courts should evaluate various factors in dismissing enhancements. Given all these factors in favor of striking the firearm enhancements, defendant argues the trial court abused its discretion in not doing so.

The People maintain the trial court properly focused on the nature and circumstances of the crimes, and the court is presumed to have considered all other relevant factors. The People contend defendant's mere disagreement with how the trial court weighed the relevant facts does not establish an abuse of discretion. Finally, the People argue defendant's reliance on the amendments to section 1385 under Senate Bill 81 is misplaced because that law does not apply retroactively to sentencings that occurred before January 1, 2022, like that at issue here.

Defendant submitted a memorandum prior to resentencing along with several supporting exhibits that addressed potential mitigating factors. At the sentencing hearing, defense counsel argued eloquently that all of the firearm enhancements should be stricken to provide a more proportional sentence in light of many relevant factors, including, among others, defendant's youth at the time the crime was committed and his exemplary conduct in prison. The sentencing hearing reflects the trial court's careful consideration of whether to strike the firearm enhancements with particular attention given to the facts of the case and the proportionality of the overall sentence in relation to the crimes and conduct at issue.

> "So the Court's main consideration at this point, candidly, are the two [section] 12022.53(d) … enhancements. Each of those led to a separate sentence of 25 years to life for [defendant]. I do believe that the [section] 12022.53(d) … as to Count 1 is applicable and with my discretion I am not exercising my discretion to strike that enhancement. As I believe I commented at sentencing, the fact that that victim did not die is just short of a miracle. That victim was shot numerous times. There was no mercy. He was trapped under a car, he was pleading and [defendant] just shot him. And I recognize [defendant] may have been under the influence of alcohol, but that shooting was, as stated at sentencing, more than callous and the

6.

[section] 12022.53(d) is applicable and I'm not exercising my discretion [to strike it].

"Count 4, however, is a different story. Count 4, while clearly supported by the evidence is—and at the time the Court did not have discretion even to consider not exercising that … once found true and [once] the Court determined there's sufficient evidence to support [it], I could not strike it. But it does strike the Court that imposing … a total of 73 years to life is rather extreme, and for those reasons as to Count 4 alone, I am exercising my discretion and striking the [section] 12022.53(d) recognizing that that will now result in a 48-year-to-life sentence. It was a very serious offense.

"I appreciate the family's sentiment that they would like [defendant] back in their life. I don't fault them for that. That's a very reasonable perspective and request as is [defendant's], but I can't ignore his conduct and I can't ignore what happened here.

"I will also note, as both Counsel have noted … [defendant] has significant remedies available to him concerning youthful offender hearings where they may be able to address other issues, but for the reasons stated and recognizing the discretion I have to address each firearm enhancement, I'm denying that discretion except as to Count 4 and I'm striking the [section] 12022.53(d) …. I'm not [resentencing] him on either Counts 1, 2, 3 or four, so therefore the total sentence is 48 years to life…."

The factors a trial court must consider when determining whether to strike a gun enhancement "are the same … the trial court must consider when handing down a sentence in the first instance." (*Pearson, supra*, 38 Cal.App.5th at p. 117, citing Cal. Rules of Court, rules 4.410, 4.421 & 4.423.) Aside from the factors listed for determining whether to strike enhancements listed in California Rules of Court, rule 4.428(b), the trial court is also to consider those factors listed in California Rules of Court, rule 4.410 (listing general objectives in sentencing), as well as circumstances in aggravation and mitigation under California Rules of Court, rules 4.421 and 4.423.[4]

---

[4]     California Rules of Court, rule 4.428(b) provides, in relevant part that, "[i]n determining whether to strike … the punishment for the enhancement, the court may consider the effect that striking the enhancement would have on the status of the crime as a strike, the accurate reflection

"[U]nless the record affirmatively reflects otherwise," the trial court is deemed to have considered factors enumerated in the California Rules of Court. (Cal. Rules of Court, rule 4.409; see Evid. Code, § 664 [presumption that official duty has been regularly performed].)

Among those factors is whether "[t]he crime involved great violence, great bodily harm, threat of great bodily harm, or other acts disclosing a high degree of cruelty, viciousness, or callousness." (Cal. Rules of Court, rule 4.421(a)(1).) The court expressly considered this factor in refusing to strike the other enhancements besides that attached to count 4, particularly as to count 1 where defendant trapped Dylan under a car and, despite the victim's pleas, shot Dylan multiple times, showing no mercy; the court observed the fact Dylan did not die was "just short of a miracle." The court noted defendant's conduct was "more than callous" and serious, reflecting that defendant had engaged in violent conduct indicating a serious danger to society. (*Id*., rule 4.421(b)(1).)

The potential mitigating factors defendant highlights on appeal were before the trial court in defendant's sentencing brief, the supporting statements of his family, and were well-articulated by defense counsel at the sentencing hearing. There is no affirmative evidence the trial court refused or failed to consider the relevant factors or misunderstood the scope of its discretion in any way. Rather, it appears the trial court did not deem the mitigating factors defendant points to as outweighing the serious nature and circumstances of the offenses. (See *People v. Lamb* (1988) 206 Cal.App.3d 397, 401 [court has wide discretion in weighing aggravating and mitigating factors, and the court need not state reasons for minimizing or disregarding circumstances in mitigation].) Even if another court might have concluded differently, the trial court's refusal to strike

---

of the defendant's criminal conduct on his or her record, the effect it may have on the award of custody credits, and any other relevant consideration."

the remaining firearm enhancements was squarely within the bounds of reason and does not reflect any abuse of discretion. (*People v. Carmony, supra*, 33 Cal.4th at p. 377.)

As for Senate Bill 81, which amended section 1385 after the May 2021 resentencing in this case, the Legislature expressly indicated the law operates prospectively only to sentencings occurring after January 1, 2022. (§ 1385, subd. (c)(7); Stats. 2021, ch. 721, § 1.) It does not apply retroactively to the May 2021 resentencing that occurred in this case.

## DISPOSITION

The trial court's judgment is affirmed.